**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| JILL MERRICK, for herself, as a private attorney general, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PREMIUM BRANDS OPCO LLC,<br><br>Defendant. | Case No. 2:25-cv-02291-JNW<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE CONSUMER PROTECTION ACT, RCW 19.86, AND THE COMMERCIAL ELECTRONIC MAIL ACT, RCW 19.190**<br><br>**DEMAND FOR TRIAL BY JURY** |
| GAYLA SUE BREACH, on her own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PREMIUM BRANDS OPCO LLC,<br><br>Defendant. | |



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

Plaintiffs Jill Merrick and Gayla Sue Breach allege as follows, on personal knowledge and upon the investigation of their counsel, against Premium Brands Opco LLC ("Defendant" or "Loft"):

## INTRODUCTION AND SUMMARY

1. This is a class action against Premium Brands Opco LLC d/b/a LOFT ("Loft") for false or misleading email marketing in violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86, and the Washington Commercial Electronic Mail Act, ("CEMA"), RCW 19.190.

2. Premium Brands Opco LLC owns and operates the Loft brand, including the retail website www.loft.com and 372 Loft retail stores across the United States, including 6 in Washington State. The Loft website and retail stores sell casual and business casual attire for women throughout the United States. Almost all the items offered for sale by Loft on its website and in its retail stores, and advertised in its email marketing, are branded as "Loft" products or as Loft sub-brand "Lou & Grey" products, and are offered and sold exclusively by Loft.

3. For years, Loft has engaged in a massive and consistent false discount advertising scheme across its website, in its retail stores, and in its marketing emails. Specifically, Loft advertises perpetual or near-perpetual discounts—typically 30% to 60% off—on all its items. These discounts are taken from Loft's inflated and self-created list prices for its items. Loft's advertised discounts are viewed both under the law and by reasonable consumers to refer to discounts from Loft's own regular offering prices for the items. However, Loft's advertised discounts are false because Loft never or almost never offers or sells the items at their list price.

4. Loft also falsely advertises "free" offers such as "Buy one, get one free," "Buy one, get two free," or "BOGO FREE," where Loft represents that it will include one or two more of a given item (or of a specified similar item) for "free" if the consumer pays the list price for the item. Loft's advertised "free" offers are viewed both under the law and by reasonable consumers to mean that the consumer is getting the "free" item(s) at no cost in



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

conjunction with the purchase of the first item at no more than that first item's regular price. However, because the item is "discounted" by up to 60% off the list price at all other times, this means Loft is directly recovering all of the cost, or even more than the cost, of the "free" item(s) by increasing the price of the first item, such that the free offer is illusory, and the consumer is not getting any deal at all.

5. Loft also falsely advertises that the purported savings are for a limited time and indicates that its items will return to the full price after the sale ends, when in fact the advertised savings are perpetual and never-ending.

6. An important part of Loft's false discount advertising scheme is to send a constant stream of marketing emails to consumers that prominently advertise these false discounts in the subject line. Many of the consumers who receive these emails with deceptive email subject lines are Washington residents.

7. For example, Loft sends emails with subject lines that advertise false discounts at a specified purported percentage off (e.g., "**Get a fresh start with 50% off tops & sweaters**"). The stated discounts in the subject lines are materially false or misleading because, in reality, the discounts are being calculated from inflated and fictitious list prices at which Loft has never or almost never offered its items for sale.

8. Loft also sends emails with subject lines that advertise false "free" offers (e.g., "☀️ **Holiday Hoorays: Buy one, get one free our fave sweaters + more**"). The subject lines are materially false or misleading because, in reality, the "free" items are not actually free; Loft directly recovers all of the cost, or even more than the cost, of the "free" item(s) by increasing the price of the first item to the inflated—and otherwise never charged—list price.

9. The subject lines of the emails are also materially false or misleading because they advertise that the purported savings are for a limited time and indicate that the items will return to the full price after the sale ends (e.g. "**24 HRS ONLY: 50% off sweaters!**"), when in fact the advertised savings are perpetual and never-ending.

10. The Washington Supreme Court recently held that CEMA "prohibits sending Washington residents commercial e-mails that contain ***any*** false or misleading information in



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

the subject lines of such e-mails." *Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025) (emphasis in original). This includes false or misleading information about promotions, sales events, or discounts. **"CEMA protects consumers by requiring that commercial e-mails communicate honestly about the terms of a given promotion or sale in the subject line."** *Id*. "A violation of CEMA's e-mail regulations is a per se violation of the Consumer Protection Act (CPA)." *Id.* at *2.

11. Plaintiffs bring this lawsuit individually and on behalf of a class of consumers residing in Washington who also received emails from Loft which contained false or misleading discount advertising in the subject line. Plaintiffs' requested relief includes an injunction to end the unlawful practices alleged herein. Plaintiffs also request an award to themselves and to each class member of $500 in statutory damages for each and every violative email received, and an award of attorneys' fees and costs.

## **THE PARTIES**

12. Plaintiff Jill Merrick is a citizen and resident of the city of Sammamish, in King County, Washington. Ms. Merrick has resided in Washington for approximately 23 years. Ms. Merrick has been receiving Loft's promotional emails ever since she made a purchase from Loft in May 2025. Ms. Merrick received, while residing in Washington, all of the violative emails described herein that Defendant sent since May 2025.

13. Plaintiff Gayla Sue Breach resides in Kitsap County, Washington and has resided in Washington at all times relevant to this complaint.

14. Ms. Breach has been receiving Loft's promotional emails since at least August 2025. Ms. Breach received, while residing in Washington, many of the emails described herein that Defendant sent.

15. Defendant Premium Brands Opco LLC is an Ohio limited liability company headquartered at 7 Times Square, New York, New York 10036. Premium Brands Opco LLC owns and operates the Loft brand[1], including the Loft website and approximately 372 Loft

[1] Prior to 2009, Loft was known as Ann Taylor Loft.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

retail stores across the United States. Almost all the items offered for sale by Loft on its website, in its retail stores, and advertised in its email marketing are branded as "Loft" products or as Loft sub-brand "Lou & Grey" products and are offered and sold exclusively by Loft. Premium Brands Opco LLC is responsible for the marketing operations of the Loft brand and the perpetration of the unlawful actions described herein—including the creation and sending of the violative emails. Premium Brands Opco LLC is referred to as "Loft" or "Defendant" in this Complaint.

## JURISDICTION AND VENUE

16. **Subject Matter Jurisdiction.** The Washington State courts in which both Plaintiff Merrick and Plaintiff Breach originally filed their claims have jurisdiction under RCW 19.86.090. Loft removed both actions to this Court. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and this is a proposed class action in which there are members of the proposed Class who are citizens of a state different from Defendant.

17. **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant pursuant to, without limitation: (1) Defendant is registered and authorized to do business in Washington State, (2) Defendant has transacted and continues to transact business within Washington State including via its Loft retail website and 6 Loft retail stores in Washington State, and/or (3) Defendant has committed tortious acts within the State of Washington or has committed tortious acts outside the State of Washington which had an impact within the State of Washington, including sending the violative emails to consumers in Washington State. In addition, Defendant intended, knew, or is chargeable with the knowledge that its out-of-state actions would have a consequence within Washington State. Defendant has sufficient minimum contacts with Washington to render the exercise of jurisdiction by this Court permissible.

18. With regard to the cause of action brought pursuant to the Washington Consumer Protection Act, this Court has personal jurisdiction over Defendant pursuant to RCW 19.86.160. For example, and without limitation, Defendant has engaged in and is continuing to



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

engage in conduct in violation of RCW 19.86 which has had and continues to have an impact in Washington State.

19. **Venue.** Venue is proper pursuant to 28 U.S.C. §1391 because both Plaintiffs are Washington citizens who reside in this District; and Defendant has transacted business in this District, including without limitation: (a) by sending the violative marketing emails alleged herein to Washington citizens who reside in this District; (b) conducting substantial online and in-person retail sales and business with Washington citizens who reside in this District; and (c) shipping clothing and other consumer goods to Washington citizens who reside in this District.

## FACTUAL ALLEGATIONS

20. Premium Brands Opco LLC owns and operates the Loft brand, including the retail website www.loft.com and 372 Loft retail stores across the United States, including 6 in Washington State. The Loft website and retail stores sell casual and business casual attire for women throughout the United States. Almost all the items offered for sale by Loft on its website and in its retail stores, and advertised in its email marketing, are branded as "Loft" products or as Loft sub-brand "Lou & Grey" products and are offered and sold exclusively by Loft.

21. Defendant markets Loft by sending promotional emails to consumers across the United States, including Washington consumers, which contain false or misleading subject lines.

### A. Background Information: Loft's Advertised Discounts Are False.

22. For years, Loft has engaged in a massive and consistent false discount advertising scheme both on its website and in its retail stores. Specifically, Loft advertises perpetual or near-perpetual discounts—typically 30% to 60% off—on all of its products. These discounts are taken from Loft's advertised list prices for its products. Loft's advertised discounts are viewed both under the law and by reasonable consumers to refer to discounts from Loft's own regular offering prices for its products. However, Loft's advertised discounts are false. Loft never or almost never offers or sells its products at their list price on its website or in its retail stores.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

23. Loft also advertises "free" offers such as "Buy one, get one free," "Buy one, get two free," or "BOGO FREE" where Loft represents that it will include one or two more of a given item (or of a specified similar item) for "free" if the consumer pays the list price for the item. Loft's advertised "free" offers are viewed both under the law and by reasonable consumers to mean that the consumer is getting the "free" item(s) at no cost in conjunction with the purchase of the first item at no more than that first item's regular price. However, because the item is "discounted" by up to 60% off the list price at all other times, this means Loft is directly recovering all of the cost, or even more than the cost, of the "free" item(s) by increasing the price of the first item, such that the free offer is illusory, and the consumer is not getting any deal at all.

24. Loft also falsely advertised that the purported savings are for a limited time and indicates that its items will return to the full price after the sale ends, when in fact the advertised savings are perpetual and never-ending.

25. Plaintiffs' allegations concerning Loft's false discount advertising are based on a comprehensive investigation by Plaintiff Merrick's counsel of Loft's pricing practices for a period of nearly 7 years. Plaintiff Merrick's counsel has been monitoring and scraping the Loft website on an automated daily basis with a proprietary software program since November 16, 2018.

26. Plaintiff Merrick's counsel has compiled and extracted daily pricing and marketing data from the website for most of the products Loft has offered during this time. In total, Plaintiff Merrick's counsel has assembled and analyzed an exhaustive historical database of daily prices and time-stamped screenshots of over 6.7 million daily offerings of approximately 55,000 products over this nearly 7-year period.

27. Plaintiff Merrick's counsel's investigation and data shows that Loft advertises perpetual discounts for nearly all of its products, typically ranging from 30% to 60% off every product.

28. The percentage-off and other discounts are false, and Loft's list prices to which the discounts are applied are false and inflated. In fact, for the overwhelming majority of the


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

products that Loft advertises with a discount or with a "free" offer, Loft has never—not even for a single day—offered the product at the list price without a discount or "free" offer.

29. Plaintiff Merrick's counsel has also investigated and reviewed years of marketing emails sent by Loft to its customers. The percentage-off discounts and "free" offers which Loft advertised, and continues to advertise, in the subject lines of its marketing emails are consistent with the false discounts and pricing on the Loft website.

30. Plaintiff Merrick's counsel has also investigated Loft's physical retail stores on at least a monthly basis since September 2024. Plaintiff Merrick's counsel has compared the Loft retail store reference prices and discounts (including those printed on product tags and the percentage-off signage posted throughout the stores), to the Loft website strikethrough prices and discounts for those products. Plaintiff Merrick's counsel has found that Loft's reference prices, advertised percentage-off discounts, and the resulting "discounted" prices for its products have been and continue to be substantially the same for its products both online and in-store.

31. Loft's false discount advertising is so pervasive across all of its products and in all of its advertising and promotional emails that it is apparent that the heart of Loft's marketing plan is to deceive the public.

32. Loft advertises these false and deceptive discounts because they work and increase sales and profits. Decades of academic research has established that the use of discount advertising like that utilized by Loft materially impacts consumers' behavior by affecting the consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the item.[2]

---

[2] *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826 (2023); Mark Armstrong & Yongmin Chen, *Discount Pricing*, 58 Econ. Inquiry 1614 (2020); Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review,* 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*,



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

33. Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly all consumers (94%) search for a deal or offer when shopping online," "81% of [consumers] say finding a great offer or discount is on their mind throughout the entire purchase journey," and "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount." RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

34. The Ninth Circuit has also acknowledged and explained how false discount advertising materially affects consumer behavior: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their items have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

### B. CEMA Prohibits Sending Washington Residents Commercial Emails With False Or Misleading Subject Lines.

35. Washington's Commercial Electronic Mail Act (CEMA) regulates deceptive email marketing.

---

100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); Gorkan Ahmetoglu, Adrian Furnham, & Patrick Fagan, *Pricing Practices: A Critical Review of their Effects on Consumer Perceptions and Behavior*, 21 J. of Retailing & Consumer Servs. 696 (2014); Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention*, 55 J. Bus. Res. 775 (2002); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

36. CEMA prohibits a person from initiating or conspiring to initiate the transmission to an email address that the sender knows, or has reason to know, is held by a Washington State resident of a commercial email that contains false or misleading information in the email's subject line. RCW 19.190.020(1)(b).

37. The Washington Supreme Court has recently confirmed that CEMA "prohibits sending Washington residents commercial e-mails that contain ***any*** false or misleading information in the subject lines of such e-mails." *Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025) (emphasis in original). This includes false or misleading information about promotions, sales, or other pricing information. **"CEMA protects consumers by requiring that commercial e-mails communicate honestly about the terms of a given promotion or sale in the subject line."** *Id.*

38. "CEMA was enacted to protect concrete interests in being free from deceptive commercial e-mails. CEMA's prohibition on sending commercial e-mails with false or misleading subject lines . . . creates a substantive right to be free from deceptive commercial e-mails." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1011 (W.D. Wash. Nov. 27, 2019) (holding that the plaintiff sufficiently pleaded a concrete injury-in-fact for alleged CEMA violations based on her receipt of marketing emails from defendant containing allegedly false "xx% off" statements in the subject line).

39. An injury occurs any time a commercial email is transmitted that contains false or misleading information in the subject line. *Harbers*, 415 F. Supp. 3d at 1011. Under CEMA, it is irrelevant whether the misleading commercial emails were solicited. *Id.*

40. "A violation of CEMA's e-mail regulations is a per se violation of the Consumer Protection Act (CPA)." *Brown*, 567 P.3d at 42.

41. Generally, a plaintiff pleading a claim under the CPA must plead five necessary elements: (1) an unfair or deceptive act or practice (2) in trade or commerce (3) that affects the public interest, (4) injury to plaintiff's business and property, and (5) causation. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 728 (2017). **However, because a violation of CEMA is a per se**



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

**violation of the CPA, all five elements are satisfied as a matter of law.** *Id.* at 724; *see also Brown*, 567 P.3d at 42.

42. "Under CEMA, the injury is receiving an e-mail that violates its regulations." *Brown*, 567 P.3d at 42. Accordingly, **"CEMA does not require a showing of injury for statutory damages to be awarded because the injury is receiving the e-mail that violates CEMA."** *Id.* at 45; *see also Wright*, 189 Wn.2d at 729 ("[CEMA] does not condition the award of damages on proving either injury or causation. In fact, damages for CEMA violations are *automatic*.") (emphasis in original).

43. A person is entitled to $500 statutory damages "anytime a prohibited message is transmitted." *Harbers*, 415 F. Supp. 3d at 1009; *see also In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2011 WL 744664, at *7 (W.D. Wash. Feb. 23, 2011) ("[CEMA] provides statutory damages of $500 for every email that violates it."). "Unlike the CPA, CEMA's $500 penalty does not require a showing of actual damages." *Brown*, 567 P.3d at 42.

### C. Loft Has Transmitted Numerous Commercial Emails With False Or Misleading Subject Lines In Violation Of CEMA.

44. Loft has transmitted numerous commercial emails with false or misleading subject lines to Plaintiffs and other Washington residents in violation of CEMA. As used in this Complaint, allegations that Loft "transmitted" or "sent" an email are allegations that Loft initiated the transmission of the email, conspired with another to initiate the transmission of the email, and/or assisted the transmission of the email.

45. These violative emails have subject lines advertising materially false percentage-off discounts or materially false "free" offers, sales or offers that will end at a stated date when Loft does not intend to end the sales or offers on that date, and "extended" sales or offers that were planned to continue through the claimed extension.

#### 1. Loft Transmits Emails With Subject Lines Advertising False Percentage-Off Discounts.

46. Loft transmits commercial emails with subject lines advertising large percentage-off discounts (typically between 30% to 60% off). These email subject lines are



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

materially false or misleading in violation of CEMA and the CPA because the advertised percentage-off discounts are phony and are calculated from inflated and fictitious list prices at which Loft never or almost never offered its items.

47. Loft sent Plaintiff Merrick numerous violative percentage-off emails. The following is a non-exhaustive list of the emails sent to Ms. Merrick on the date, and containing the email subject line, specified below:

| **Date** | **Email Subject Line** |
|---|---|
| 10/08/2025 | 50% off LOFT Versa Collection? We (almost) never do this. |
| 10/07/2025 | 70% OFF so many styles (including sale) ends tonight |
| 10/07/2025 | Today's deal: 70% OFF select styles (!!!) |
| 10/06/2025 | NEW arrivals just dropped (+ it's all 40% off)* |
| 10/05/2025 | 60% off ENDS TONIGHT* |
| 10/05/2025 | 🚨 24HRS ONLY: Enjoy 60% OFF* 🚨 |
| 10/04/2025 | 48% off + FREE shipping ends so soon |
| 10/02/2025 | 10% off: They're baaaaack (your favorites, that is) |
| 09/28/2025 | 50% off + extra 15% off + FREE shipping & more ends in hours |
| 09/28/2025 | TODAY ONLY: 50% off + extra 15% off + free shipping |
| 09/27/2025 | STARTS NOW: $25 sweaters & 50% off EVERYTHING else* |
| 09/26/2025 | Join us in stores tomorrow for a shopping party + 50% off everything* 🎉 |
| 09/26/2025 | New fall layers + 50% off everything* |
| 09/25/2025 | Top off your look + everything's 50% off!* |
| 09/15/2025 | Last chance for 50% off + FREE shipping |
| 09/15/2025 | 50% off + FREE shipping is NOW EXTENDED |
| 07/02/2025 | The 4th of July Event is on! Enjoy 50% off! |
| 06/28/2025 | This is kind of a big deal: Enjoy 50% off |
| 06/24/2025 | 60% off the Vacation Shop—today only! |
| 06/22/2025 | Date night picks now 50% off |



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

| | |
|---|---|
| 06/21/2025 | 60% off all dresses for a VERY limited time |
| 06/20/2025 | 50% OFF new arrivals you need now |
| 06/20/2025 | Celebrate summer with 50% off! |

48. Loft also sent numerous other violative emails with similar false percentage-off discounts in the subject lines to Washington residents in the last four years. The following is a non-exhaustive list of such emails sent on the date, and containing the email subject line, specified below:

| **Date** | **Email Subject Line** |
|---|---|
| 03/02/2025 | It just got better: 40% off + EXTRA 20% off! |
| 03/01/2025 | 50% off tops & sweaters is NOW EXTENDED for 1 more day |
| 02/28/2025 | TODAY ONLY: 50% off tops & sweaters |
| 12/24/2024 | GO, GO, GO: Up to 60% off ends tonight |
| 12/23/2024 | Up to 60% off officially ends tomorrow! |
| 12/22/2024 | TODAY ONLY: 60% off sweaters |
| 12/20/2024 | Up to 60% off to finish your holiday shopping! |
| 11/20/2024 | QUICK: 50% off sale + extra 20% off ends at midnight |
| 11/20/2024 | 1 DAY ONLY: 50% off sale + EXTRA 20% off |
| 11/18/2024 | Until midnight: 60% off wear-now faves |
| 10/03/2024 | 24 HRS ONLY: 50% off sweaters! |
| 09/06/2024 | NOW EXTENDED: 40% off + extra 20% off! |
| 09/05/2024 | 40% off + extra 20% off new fall tops ENDS TONIGHT! |
| 09/05/2024 | TODAY ONLY: 40% off + EXTRA 20% off! |
| 08/25/2024 | TONIGHT ONLY: Up to 75% off + EXTRA 15% off! |
| 07/03/2024 | Sun up to sun down styles NOW 50% OFF! |
| 07/02/2024 | This calls for a parade: 50% off starts NOW |
| 07/01/2024 | ENDS TODAY: 40% off + EXTRA 20% off (+ SO many steals!) |



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

| | |
|---|---|
| 06/30/2024 | STARTS NOW: 40% off + EXTRA 20% off! |
| 06/29/2024 | Red, white NEW and 40% off (!) |
| 04/28/2024 | 📣 TODAY ONLY: 40% off + extra 15% off! 📣 |
| 04/25/2024 | Shop 40% off your purchase + extra 20% off 250 new markdowns ASAP |
| 02/28/2024 | TONIGHT ONLY: 50% off ALL tops & sweaters |
| 02/26/2024 | STARTS TODAY: 40% off NEW spring tops & sweaters! |
| 02/22/2024 | LIMITED TIME ONLY: up to 50% off Lou & Grey! |
| 02/07/2024 | TODAY ONLY: 50% off Lou & Grey! |
| 12/06/2023 | STARTS NOW: 40% off + EXTRA 15% off! |
| 12/03/2023 | TONIGHT ONLY: 70% off 3+ sale styles |
| 12/02/2023 | 50% off Lou & Grey + so much more |
| 10/22/2023 | TODAY ONLY: 50% off sale + EXTRA 20% off $150+! |
| 10/15/2023 | Final call! Up to 60% off ends tonight! |
| 10/15/2023 | TODAY ONLY: up to 60% off! |
| 10/13/2023 | Up to 50% off starts NOW! |
| 10/12/2023 | LAST CHANCE: 40% off ALL tops & sweaters! |
| 10/12/2023 | NOW EXTENDED: 50% off Lou & Grey is back! |
| 10/11/2023 | 1 day only: 50% off Lou & Grey! |
| 04/01/2023 | TONIGHT ONLY: up to 60% off + EXTRA 20% off sale |
| 03/31/2023 | New dresses are 30% off |
| 03/28/2023 | TODAY ONLY: 50% off Lou & Grey |
| 01/21/2023 | 30% off stripes, florals and SO much more |
| 01/20/2023 | Our NEW Lou & Grey collection is 30% off! |
| 01/19/2023 | 30% off our best sellers! |
| 01/17/2023 | ENDS TONIGHT: 50% off (!!!) |
| 01/17/2023 | 24 hrs only: 50% OFF!!! |
| 01/16/2023 | Psst! 70% off ENDS TONIGHT! |



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

| | |
|---|---|
| 11/14/2022 | STARTS NOW: 40% off *all* the sparkle |
| 11/13/2022 | 40% off + EXTRA 20% off sale ends tonight! |
| 11/11/2022 | An 11/11 treat: 44% off + EXTRA 11% off! |
| 08/31/2022 | Up to 75% OFF?!!! 🎉 |
| 08/28/2022 | ENDS TONIGHT: 60% off sale + extra 20% off |
| 08/26/2022 | 60% off sale + EXTRA 20% off (!!!) |
| 08/25/2022 | Starting now: 25% off tops & sweaters! |
| 08/21/2022 | Shop FAST! 25% off + extra 20% off ENDS TONIGHT! |
| 06/23/2022 | 50% off 1 full-price item starts now! |
| 06/22/2022 | TODAY ONLY: 60% off tees, tanks & shorts |
| 06/17/2022 | Psst—50% off outfit-making tops |
| 06/17/2022 | Start your spree: 50% off your purchase! |
| 06/16/2022 | 50% off your purchase STARTS NOW! |
| 06/12/2022 | 50% off sale styles + extra 15% off ends TODAY! |
| 01/27/2022 | Layer up with 50% off tops, sweaters & coats |
| 01/23/2022 | For one day only: 60% off sweaters & more |
| 01/06/2022 | ENDS TODAY: 50% off tops & sweaters |
| 01/05/2022 | Get a fresh start with 50% off tops & sweaters |

49. The advertised percentage-off discounts in these email subject lines are viewed both under the law and by reasonable consumers to refer to discounts from Loft's own regular offering prices for its products. In reality, Loft calculated the "xx% Off" statements from fictitious list prices at which Loft never or almost never offered its products. Meanwhile, there was no qualifier or other indicator in the subject line to notify the email recipients that Loft had assigned these words and symbols an invented or unusual subjective meaning rather than their ordinary or objective meaning.



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

### 2. Loft Transmits Emails With Subject Lines Advertising False "Free" Offers.

50. Loft also sends commercial emails with subject lines advertising false discounts in the form of "free" offers such as "Buy one, get one free," "Buy one, get two free," or "BOGO FREE." The "free" offers advertised in these email subject lines are materially false or misleading in violation of CEMA and the CPA because Loft inflates the first item's selling price (typically at least doubling it from the true regular price) to recover the cost of the "free" item(s), such that the "free" offer is phony.

51. For example, Loft sent Washington State residents the following violative "free" offer emails on the date, and containing the email subject line, specified below:

| **Date** | **Email Subject Line** |
|---|---|
| 11/21/2024 | ☀️ Holiday Hoorays: Buy one, get one free our fave sweaters + more |
| 08/20/2024 | LAST CHANCE! buy one, get one FREE pants & jeans! |
| 08/15/2024 | FINAL Weekend: buy one, get one FREE pants & jeans! |
| 08/10/2024 | Our FAVE pants & jeans, buy one get one FREE! |
| 07/02/2024 | $9.99 TANKS! $19.99 SHORTS! TEES buy one, get one FREE! |
| 06/18/2024 | Buy one, get one FREE TEES! $12.99 TANKS! $24.99 DRESSES! |
| 06/11/2024 | Buy one, get one FREE shorts & tees! |
| 06/08/2024 | Shorts & tees, BOGO FREE! |
| 06/01/2024 | DRESSES buy one, get one FREE! |
| 05/25/2024 | Tees buy one, get TWO FREE & more Memorial Day deals! |
| 07/01/2023 | $9.99 tanks! buy one, get TWO FREE tees! $19.99 shorts! |
| 06/13/2023 | LAST CHANCE: BOGO FREE tees and shorts |
| 06/10/2023 | BOGO FREE tees and shorts – don't miss out! |
| 06/06/2023 | Happening Now: BOGO FREE dresses, up to 50% OFF and more! |
| 06/01/2023 | The Summer Dress Event: Buy one, get one FREE! |
| 05/28/2023 | Buy one, get TWO FREE tees! BOGO shorts! $12.99 tanks! |
| 05/16/2023 | BOGO FREE tees & tanks! BOGO $10 shorts! up to 60% OFF! |



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

52. The "free" offer statements in these email subject lines are false and misleading. Advertised "free" offers such as these are viewed both under the law and by reasonable consumers to mean that the consumer is getting the "free" item(s) at no cost in conjunction with the purchase of the first item at no more than that first item's regular price. However, whenever Loft makes such a purported "free" offer, Loft inflates the first item's selling price to its never otherwise charged list price. Because the item is "discounted" by up to 60% off the list price at all other times, this means Loft is directly recovering all of the cost, or even more than the cost, of the "free" item(s) by increasing the price of the first item, such that the free offer is illusory, and the consumer is not getting any deal at all.

53. The Federal Trade Commission warns sellers advertising "Free" offers that "such offers must be made with extreme care so as to avoid any possibility that consumers will be misled or deceived." 16 C.F.R. § 251.1(a)(2). "[W]hen the purchaser is told that an article is 'Free' to him if another article is purchased, **the word 'Free' indicates that he is paying nothing for that article and no more than the regular price for the other**. Thus, a purchaser has a right to believe that the merchant will not directly and immediately recover, in whole or in part, the cost of the free merchandise or service by marking up the price of the article which must be purchased[.]" 16 C.F.R. § 251.1(b)(1) (emphasis added).

54. Accordingly, it is deceptive for a seller making a "Free" offer to "increase[] his regular price of the article required to be bought." 16 C.F.R § 233.4(b). "Regular price" means "the price, in the same quantity [and] quality, … at which the seller or advertiser of the item or service has openly and actively sold the item or service in the geographic market or trade area in which he is making a 'Free' or similar offer in the most recent and regular course of business, for a reasonably substantial period of time, i.e., a 30–day period." 16 C.F.R. § 251.1(b)(2).

### 3. Loft Transmits Emails with Subject Lines That Falsely State That a Discount Offer Is Ending at a Stated Time or Is Being Extended.

55. Loft commonly sends multiple emails in a single day which falsely state in the subject line that a discount offer is ending or is being extended. Loft will send such emails (i)



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

when a limited time sale starts, (ii) while the sale is ongoing, (iii) when the sale is close to ending, (iv) when the sale is (purportedly) in its final hours, and (v) when the sale has been "extended" or renewed. These repetitive emails clog up inboxes and waste limited data space.

56. Loft misrepresents how long it is offering a sale by sending emails with subject lines stating that a sale has been "extended." However, discovery will show that Loft had actually planned to continue the sale, and the advertised "extension" is fake.

57. For example, Loft sent the following emails to Plaintiff Breach advertising a limited time sale in August 2025 in the sequence listed below:

| **Date** | **Email Subject Line** |
|---|---|
| 08/07/2025 | Just for today: EXTRA 60% OFF sale styles |
| 08/07/2025 | Extra 60% off sale styles ENDS TONIGHT |
| 08/08/2025 | Now extended: extra 60% off sale styles! |

58. The subject lines of the emails identified above were false and misleading because the sale did not end when Loft said it would end, and at the time the emails were sent Loft did not intend to only offer the sale for one day. The claimed "extension" was not a true extension; rather Loft had actually planned to continue the sale through the period of the "extension."

59. As another example, Loft sent the following emails to Plaintiff Breach advertising a limited time sale in September 2025:

| **Date** | **Email Subject Line** |
|---|---|
| 09/14/2025 | 50% off everything + FREE shipping today only!* |
| 09/15/2025 | 50% off + FREE shipping is NOW EXTENDED |

63. The subject line of the email Loft sent on Sunday, September 14, 2025 stating "50% off everything + FREE shipping today only!*" was false and misleading because, at the time the email was sent, Loft did not intend to offer the sale "today only."



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

64. The subject line of the email Loft sent on Monday, September 15, 2025, around 3:00 a.m., stating "50% off + FREE shipping is NOW EXTENDED" was false and misleading because Loft had actually planned to offer the sale after September 14.

65. As another example, Loft sent the following emails to Plaintiff Breach advertising a limited time sale in October 2025 in the sequence listed below:

| Date | Email Subject Line |
|---|---|
| 10/13/2025 | 50% off + extra 15% off + FREE shipping ENDS TONIGHT |
| 10/13/2025 | IT ALL ENDS TONIGHT |
| 10/14/2025 | 50% off + extra 15% off + free shipping is NOW EXTENDED* |

66. The email subject lines Loft sent on the holiday, October 13, 2025, stating "ENDS TONIGHT" were false and misleading because Loft did not intend for the sale to "end tonight."

67. The subject line of the email Loft sent on October 14, 2025, around 3:00 a.m., stating "50% off + extra 15% off + free shipping is NOW EXTENDED*" was false and misleading because, as discovery will show, Loft had actually planned to offer the sale after October 13.

68. The above violative emails are only a fraction of the hundreds of such violative emails Loft sent to Washington State residents within the applicable limitations period.

69. As of the date of the filing of this Complaint, Plaintiffs are still receiving Loft's commercial emails. Plaintiffs would like to continue receiving Loft's commercial emails, provided that the subject lines of the emails do not contain false or misleading information.

### D. Loft Sent Commercial Emails To Consumers Whom It Knew, Or Had Reason To Know, Resided In Washington State.

70. Loft sent the false and misleading commercial emails to email addresses that Loft knew, or had reason to know, were held by Washington State residents (i.e., Plaintiffs and members of the Class), because Loft had a physical Washington State address that was



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

associated with the recipient and/or Loft had access to data regarding the recipient indicating that they were in Washington State. Loft knew or should have known that Plaintiffs and the members of the Class were residents of Washington State.

71. Loft knows where the overwhelming majority of the recipients of its commercial emails reside because the recipients have previously purchased products from Loft and have previously provided their address to Loft.

72. First, whenever a person places an order through the Loft website, Loft associates that email address with a shipping address and billing address for that order.

73. Second, Loft encourages its customers to create online accounts. Customers save their contact information in their Loft accounts, including their email address, shipping address, billing address, and phone number.

74. Discovery will show that, at the time Loft sent the commercial emails to the members of the Class, Loft had the physical address for virtually every consumer to whom it sent commercial emails.[3]

---

[3] Loft also has other methods by which it could have determined whether the consumers to whom it sent the violative emails resided in Washington. Loft employs online tracking methods including "pixel tags" to track the effectiveness of its marketing emails and to identify consumers who click on links contained in Loft's marketing emails, including by identifying their physical location, as Loft states in the privacy policy posted on the Loft retail website. Loft could have used the information obtained through these online tracking technologies to identify which consumers are in Washington.

Additionally, Loft knew, or had reason to know, that the email addresses were held by Washington residents because this information was available to Loft upon request from the registrant of the internet domain name contained in each recipient's email address. *See* RCW 19.190.020(2). Loft also knew or had reason to know that it sent emails to Washington residents due to its large presence in the state and the volume of marketing emails it sends to people around the country. *See State v. Heckel*, 122 Wash. App. 60, 69 (2004) (holding as a matter of law that a defendant had a reason to know that he sent emails to Washington residents by sending over 100,000 emails a week to people around the country).



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

## CLASS ALLEGATIONS

75. Plaintiffs bring this lawsuit on behalf of themselves and the members of the following class (the "Class"):

> **All persons who, while a Washington resident and within the applicable limitations period, received an email from or at the behest of Loft that contained in the subject line: (a) a "xx% Off" or similar percentage-off statement; (b) a statement advertising a "free" offer; (c) a statement that a sale, discount, price, or other offer is ending at a stated time, when the sale was planned to continue past that time; and/or (d) a statement that a sale, discount, price, or other offer is being extended, when Loft planned to offer the sale, discount, price, or other offer through the extension period advertised.**

76. Specifically excluded from the Class are the Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, Defendant's agents and employees and attorneys, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

77. **Numerosity.** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiffs do not know the exact number of Class members prior to discovery. However, based on information and belief, the Class comprises thousands of individuals. The exact number and identities of Class members are contained in Loft's records and can be easily ascertained from those records.

78. **Commonality and Predominance.** This action involves multiple common legal or factual questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any. These common questions include, but are not limited to, the following:

a. Whether Defendant sent commercial emails with false or misleading information in the subject lines;

b. Whether Defendant initiated the transmission or conspired to initiate the transmission of such commercial emails to recipients residing in Washington State in violation of RCW 19.190.020;



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

c. Whether a violation of RCW 19.190.020 establishes all the elements of a claim under Washington's Consumer Protection Act, RCW 19.86 *et seq*.;

d. Whether Defendant should be enjoined from further engaging in the misconduct alleged herein;

e. Whether Defendant should be ordered to pay statutory damages to Plaintiffs and Class members; and

f. The nature and extent of Class-wide injury and damages.

79. **Typicality.** Plaintiffs' claims are typical of Class members' claims. Defendant transmitted, conspired to transmit, or assisted to transmit emails with false or misleading information in the subject line to Plaintiffs and to each Class member. Plaintiffs and Class members all bring the same claims and face the same potential defenses.

80. **Adequacy.** Plaintiffs and their counsel will fairly and adequately protect Class members' interests. Plaintiffs have no interests antagonistic to Class members' interests and are committed to representing the best interests of the Class members. Moreover, Plaintiffs have retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

81. **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Defendant's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiffs do not anticipate any difficulties in managing a class action trial.

82. **Injunctive Relief.** Defendant's conduct is uniform as to the Class. By its conduct and omissions alleged herein, Defendant has acted and refused to act on grounds that



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

apply generally to the Class members, such that final injunctive relief and/or declaratory relief is appropriate with respect to the Class as a whole. Plaintiffs further allege, on information and belief, that the emails described in this Complaint are substantially likely to continue in the future if an injunction is not entered.

83. Defendant is primarily engaged in the business of selling goods. Each cause of action asserted by Plaintiffs against Defendant in this Complaint arises out of and is limited to communications related to Defendant's sale of goods.

## CAUSES OF ACTION

### COUNT I
### Per Se Violation of the Washington Consumer Protection Act
### RCW Chapter 19.86

84. Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

85. Plaintiffs plead this count in three separate capacities: in their individual capacities, as private attorneys general, and as proposed class representatives serving on behalf of all others similarly situated.

86. The Washington Consumer Protection Act (the "CPA"), RCW 19.86, is Washington's principal consumer protection statute. The CPA's primary substantive provision declares unfair methods of competition and unfair or deceptive acts or practices to be unlawful. RCW 19.86.020.

87. The CPA recognizes and incorporates *per se* violations. "Per se CPA violations are predicated on the Legislature's recognition that certain conduct is categorically against the public interest." *Brown v. Old Navy, LLC*, 567 P.3d 38, 46 (Wash. 2025). The Washington Legislature routinely prohibits certain specified conduct but, instead of, or in addition to, creating a new and independent private right of action to enforce the prohibition, the Legislature deems the unlawful conduct to be a *per se* violation of the CPA.

88. If a defendant engages in that unlawful conduct, a plaintiff may file a CPA complaint alleging the *per se* violation and seek the remedies available under the CPA and/or the remedies available under the statute which forbids the *per se* violation. *See* Washington



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

Pattern Jury Instruction Civil No. 310.03 (*Per Se* Violation of Consumer Protection Act) and Appendix H (Consumer Protection Act *Per Se* Violations).

89. A plaintiff can plead a violation of the CPA by pleading that the CPA was violated *per se* due to a violation of the Washington Commercial Electronic Mail Act ("CEMA"). *See Brown*, 567 P.3d at 42 ("A violation of CEMA's e-mail regulations is a per se violation of the Consumer Protection Act (CPA)."); *see also* RCW 19.190.030(1)(b) ("It is a violation of the consumer protection act, chapter 19.86 RCW . . . to initiate the transmission of a commercial electronic mail message that . . . [c]ontains false or misleading information in the subject line.").

90. CEMA prohibits a person from initiating the transmission to an email address that the sender knows or has reason to know is held by a Washington State resident of a commercial email that contains false or misleading information in the email's subject line. RCW 19.190.020(1)(b). The Washington Supreme Court has held that this includes subject lines with ***any*** false or misleading information. *Brown*, 567 P.3d at 47 ("[CEMA] prohibits sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails.") (emphasis in original).[4]

91. "CEMA was enacted to protect concrete interests in being free from deceptive commercial e-mails. CEMA's prohibition on sending commercial e-mails with false or misleading subject lines . . . creates a substantive right to be free from deceptive commercial e-mails." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1011 (W.D. Wash. Nov. 27, 2019) (holding that the plaintiff sufficiently pleaded a concrete injury-in-fact for alleged CEMA violations based on her receipt of marketing emails from defendant containing allegedly false "xx% off" statements in the subject line).

---

[4] CEMA also prohibits a person from initiating the transmission from a computer located in Washington State of a commercial electronic mail message which contains false or misleading information in the subject line. RCW 19.190.020(1)(b). Plaintiffs are not alleging a CEMA violation under this prong because, as of the filing of this lawsuit, they do not possess information that the offending emails were transmitted from a computer located in Washington State. Plaintiffs reserve the right to seek to amend this pleading in the event that they obtain information, through discovery or otherwise, which indicates that the offending emails were transmitted from a computer located in Washington State.



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

92. Under CEMA, it is irrelevant whether the commercial emails were solicited. *Harbers*, 415 F. Supp. 3d at 1011.

93. Generally, a plaintiff pleading a claim under the CPA must plead five necessary elements: (1) an unfair or deceptive act or practice (2) in trade or commerce (3) that affects the public interest, (4) injury to plaintiff's business and property, and (5) causation. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 728 (2017). **Because Plaintiffs allege a *per se* CPA violation by alleging a CEMA violation, all of these five elements are satisfied as a matter of law.** *Id.* at 724; *see also Brown*, 567 P.3d at 42.

94. "Under CEMA, the injury is receiving an e-mail that violates its regulations." *Brown*, 2025 WL 1132243, at *2. Accordingly, **"CEMA does not require a showing of injury for statutory damages to be awarded because the injury is receiving the e-mail that violates CEMA."** *Id.* at 45; *see also Wright*, 189 Wn.2d at 729 ("[CEMA] does not condition the award of damages on proving either injury or causation. In fact, damages for CEMA violations are *automatic*.") (emphasis in original).

95. A plaintiff who successfully pleads and proves a CEMA violation as a *per se* violation of the CPA may recover the remedies which the plaintiff chooses to seek that are available under the CPA (e.g., injunctive relief, treble damages, attorneys' fees and costs (RCW 19.86.090)) and/or the remedies available under CEMA (e.g., statutory damages of $500 per email sent in violation of CEMA and injunctive relief (RCW 19.190.040, RCW 19.190.090)).

96. **"Unlike the CPA, CEMA's $500 penalty does not require a showing of actual damages."** *Brown*, 567 P.3d at 42. A person is entitled to $500 statutory damages "anytime a prohibited message is transmitted." *Harbers*, 415 F. Supp. 3d at 1009; *see also In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2011 WL 744664, at *7 (W.D. Wash. Feb. 23, 2011) ("[CEMA] provides statutory damages of $500 for every email that violates it.").

97. Plaintiffs and Class members are "persons" within the meaning of the CPA, RCW 19.86.010(1).

98. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

99. Defendant has initiated the transmission, conspired with another to initiate the



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

transmission, and/or assisted the transmission of numerous commercial emails with subject lines containing false or misleading information to Plaintiffs and the Class. RCW 19.190.030(1)(b).

100. The subject lines of Loft's emails contained materially false or misleading information.

101. The false or misleading information in the subject lines of Loft's emails was intended to, or had the capacity to, deceive a substantial portion of the public.

102. The emails were electronic mail messages, in that they were emails sent to an email address; the emails also referred to an internet domain, whether or not displayed, to which an email can or could be sent or delivered. RCW 19.190.010(5).

103. The emails were "commercial electronic mail messages," in that they were sent for the purpose of promoting goods or services for sale or lease. RCW 19.190.010(2).

104. Loft was the original sender of the emails.

105. Plaintiffs and the Class members each received the emails at their electronic mail addresses, which are the destinations, commonly expressed as a string of characters, at which they receive and to which electronic mail may be sent or delivered. RCW 19.190.010(4).

106. Loft initiated the transmission, conspired with another to initiate the transmission, and/or assisted the transmission of the emails to one or more email addresses that Loft knew, or had reason to know, was held by a Washington State resident, i.e., Plaintiffs and members of the Class.

107. At all relevant times, Loft knew, or had reason to know, that the intended recipients (Plaintiffs and members of the Class) were residents of the State of Washington because, without limitation: (1) Loft possessed actual knowledge of Plaintiffs' and each Class member's state of residence; (2) Loft possessed constructive knowledge of Plaintiffs' and each Class member's state of residence; (3) information was available to Loft upon request from the registrant of the internet domain name contained in each recipient's email address; and/or (4) Loft otherwise knew or should have known or had reason to know that Plaintiffs and the members of the Class were residents of the State of Washington.



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

108. For example, without limitation, Loft knew or had reason to know that it sent emails to Washington residents because many, if not the vast majority, of consumers who received its commercial emails had provided Loft with their shipping address and billing address when they placed an order with Loft and/or when they created an online account.

109. Loft engaged in a pattern and practice of violating CEMA. As a result of Loft's acts and omissions, Plaintiffs and Class members are entitled to $500 in statutory damages for each and every email that violated CEMA that was transmitted to them. Plaintiffs and Class members are also entitled to recover actual damages, treble damages, and attorneys' fees and costs, pursuant to RCW 19.86.090.

110. Treble damages are appropriate under these circumstances because, without limitation, Loft's misconduct has been "an ongoing course of conduct affecting thousands of consumers" and thus has a "strong public interest impact." *See Matheny v. Unumprovident Corp.*, 594 F. Supp. 2d 1212, 1225 (E.D. Wash. 2009).

111. **Permanent injunctive relief.** Plaintiffs, acting as private attorneys general, seek public injunctive relief under the CPA to protect the general public from Loft's misconduct.

112. The Washington Supreme Court treats consumers as "private attorneys general," and has held that consumers' ability to enjoin unlawful conduct is a primary purpose of the CPA:

> Private actions by private citizens are … an integral part of CPA enforcement. **Private citizens act as private attorneys general** in protecting the public's interest against unfair and deceptive acts and practices in trade and commerce. **Consumers bringing actions under the CPA do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief even when the injunction would not directly affect their own private interests.**"

*Scott v. Cingular Wireless*, 160 Wn.2d 843, 161 P.3d 1000, 1006 (2007) (emphasis added).

113. A consumer may seek injunctive relief to protect the public even if the requested relief would not directly benefit her. *See Hockley v. Hargitt*, 82 Wn.2d 337, 510 P.2d 1123, 1132–33 (1978).

114. Loft's misconduct, which affects and harms the general public, is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

repetition or re-occurrence by Loft absent a permanent public injunction. Accordingly, Plaintiffs seek an order enjoining Loft from committing the unlawful conduct alleged herein.

115. The balance of the equities favors the entry of permanent public injunctive relief against Loft. Plaintiffs, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Loft's ongoing misconduct absent the entry of permanent public injunctive relief against Loft.

116. To the extent required, Plaintiffs further allege that they lack an adequate remedy at law to prevent Loft from engaging in the unlawful conduct alleged herein. Plaintiffs continue to receive commercial emails from Loft, and they want to continue receiving commercial emails from Loft in the future, provided that the subject lines of the emails do not contain false or misleading information. Plaintiffs will be harmed if, in the future, they receive commercial emails from Loft that have false or misleading information in their subject lines.

117. Monetary damages are not an adequate remedy at law for future harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: First, damages are not an adequate remedy for future harm because they will not prevent Loft from engaging in its unlawful conduct. Second, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know how many violative emails Loft will send Plaintiffs in the future. Third, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful conduct, the courts may be flooded with future lawsuits by Class members, Plaintiffs, and the general public for future violations of the law by Loft.

## COUNT II
## Violation of the Washington Commercial Electronic Mail Act
## RCW Chapter 19.190

118. Plaintiffs reallege and incorporate by reference all paragraphs alleged hereinabove.



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

119. Plaintiffs plead this count in three separate capacities: in their individual capacities, as private attorneys general, and as proposed class representatives serving on behalf of all others similarly situated.

120. The Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190, creates an independent private right of action which can be asserted by, among others, a person who is the recipient of a commercial electronic mail message which contains false or misleading information in the subject line. RCW 19.190.030(1)(b). A plaintiff who successfully alleges and proves such a violation may obtain, among other things, an injunction against the person who initiated the transmission. RCW 19.190.090(1). It is Plaintiffs' intent in this count to plead an independent CEMA cause of action only to the extent that it is recognized by law, e.g., when a plaintiff seeks injunctive relief. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 728 n. 3 (2017) ("we note that a plaintiff may bring an action to enjoin any CEMA violation."); *Gragg v. Orange Cab Co.*, 145 F. Supp. 3d 1046, 1052 (W.D. Wash. 2015).

121. Defendant has violated CEMA on the grounds alleged in Count I above.

122. For the reasons alleged in Count I, Plaintiffs seek, and may obtain, a permanent public injunction against Defendant.

## PRAYER FOR RELIEF

A. Plaintiffs Jill Merrick and Gayla Sue Breach, on behalf of themselves and the proposed Class, request that the Court order relief and enter judgment against Defendant Premium Brands Opco LLC, as follows:

1. Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiffs and their counsel to represent the Class;

2. Permanently enjoin Defendant from engaging in the unlawful conduct alleged herein, pursuant to, without limitation, RCW 19.86.090 and RCW 19.190.090(1);

3. Order Defendant to pay Plaintiffs and each member of the Class statutory damages of $500 for each commercial email that Defendant transmitted to them that contained false or misleading information in the subject line in violation of CEMA pursuant to, without limitation, RCW 19.190.020(1)(b), RCW 19.190.030(1)(b), and RCW 19.190.040(1);



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

4. Order Defendant to pay treble damages pursuant to RCW 19.86.090;

5. Order Defendant to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

6. Grant such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 29th day of January, 2026.

HATTIS LUKACS & CORRINGTON

By: */s/ Daniel M. Hattis*
Daniel M. Hattis, WSBA No. 50428
Email: dan@hattislaw.com
Che Corrington, WSBA No. 54241
Email: che@hattislaw.com
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Telephone: (425) 233-8650
Facsimile: (425) 412-7171

Roger N. Heller, *Admitted Pro Hac Vice*
Email: rheller@lchb.com
Daniel M. Hutchinson, *Admitted Pro Hac Vice*
Email: dhutchinson@lchb.com
Courtney J. Liss, *Admitted Pro Hac Vice*
Email: cliss@lchb.com
Sara B. Evall, *Admitted Pro Hac Vice*
Email: sevall@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Attorneys for Plaintiff Jill Merrick and the Proposed Class*

TERRELL MARSHALL LAW GROUP

By: */s/ Beth E. Terrell*
Beth E. Terrell, WSBA #26759
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray, WSBA #36983
Email: jmurray@terrellmarshall.com
Blythe H. Chandler, WSBA #43387
Email: bchandler@terrellmarshall.com
Eden B. Nordby, WSBA #58654

Email: enordby@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603

Sophia M. Rios, *Pro Hac Vice Forthcoming*
Email: srios@bergermontague.com
BERGER & MONTAGUE, P.C.
8241 La Mesa Blvd., Suite A
La Mesa, California 91942
Telephone: (619) 489-0300

E. Michelle Drake, *Pro Hac Vice Forthcoming*
Email: emdrake@bergermontague.com
BERGER & MONTAGUE, P.C.
1229 Tyler Street NE, Suite 205
Minneapolis, Minnesota 55413
Telephone: (612) 594-5933

Colleen Fewer, *Pro Hac Vice Forthcoming*
Email: cfewer@bergermontague.com
BERGER & MONTAGUE, P.C.
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone: (415) 376-2097

James Hannaway, *Pro Hac Vice Forthcoming*
Email: jhannaway@bergermontague.com
BERGER & MONTAGUE, P.C.
1001 G Street NW, 4th Floor Suite 400 East
Washington, DC 20001
Telephone: (202) 869-4524

*Attorneys for Plaintiff Gayla Sue Breach and the Proposed Class*